UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
FILED

2015 JUN 30  PM 3:50

CLERK
BY_____
DEPUTY CLERK

KENNETH WOZNIAK,                )
                                )
    Plaintiff,                  )
                                )
    v.                          )        Case No. 1:14-cv-00198-GWC
                                )
COMMISSIONER OF SOCIAL          )
SECURITY,                       )
                                )
    Defendant.                  )

**OPINION AND ORDER**
**(Docs. 10, 15)**

Plaintiff Kenneth Wozniak brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income ("SSI"). Pending before the court are the parties' motions for judgment on the pleadings. For the reasons stated below, the court DENIES Wozniak's motion and GRANTS the Commissioner's motion. The decision of the Commissioner is AFFIRMED.

**I.      Background**

Kenneth Wozniak was thirty-nine years old on his alleged disability onset date of March 19, 2011. (AR 10.) He has been diagnosed with bipolar disorder, alcohol dependence, migraines, and post-traumatic stress disorder ("PTSD"). (AR 248, 276, 461.) He has a tenth-grade education. (AR 187.) Wozniak has lived in various halfway houses, and at the time of the hearing he was living in emergency housing. (AR 39, 440.)

Wozniak has an extensive history of alcohol dependence treatment. He was hospitalized at least four times since 2004 for detoxification and inpatient treatment. (AR 234.) He has also participated in various rehabilitation and outpatient treatment programs, completing most but failing one due to lack of attendance. (AR 258.) In 2007, Wozniak's girlfriend was killed by a drunk driver, and he has found it more difficult to remain sober since then. (AR 35.) Wozniak

1

has no relationship to family members; his parents are deceased and his brother is also alcohol dependent. Wozniak's father was also addicted to alcohol and was physically and emotionally abusive. (AR 444.)

In 2008, Wozniak began experiencing severe migraine headaches. (AR 27.) He claims that he has about five headaches per week, lasting up to a day or longer. (AR 201.) At the onset of a headache, he sees spots and feels pain at the nape of his neck and in his left arm. (*Id.*) He stated that the headaches themselves are so painful that he vomits, cannot stand light or sound, and is bedridden. (*Id.*; AR 27.) Dr. Patrick Frieary, Wozniak's migraine treating physician, prescribed Topamax and Imitrex, but Wozniak stated the medications did not control his symptoms. (AR 202, 27.) Dr. Frieary also advised Wozniak to quit smoking, to improve his amount of sleep and his personal hygiene, and to avoid cheese, caffeine, and chocolate. (AR 462.) At the time of the hearing Wozniak was not taking any medication for his migraines. (AR 27.)

In the past, Wozniak worked in the produce department at two grocery stores and at Burger King. (AR 32-33.) He stated that he was fired from all three jobs for absenteeism due to his migraines. (*Id.*) Wozniak has not worked since his alleged disability onset date of March 19, 2011, claiming that his anxiety, bipolar disorder, PTSD, and migraines prevent him from working. (AR 186.)

Wozniak stated that he spends many days in bed due to his migraines. (AR 194.) On a weekly basis, he also cooks, watches television, and shops for groceries. (AR 194-96.) He stated that he does not do any house or yard work because such work causes him headaches. (AR 196.) He enjoys fishing, but claimed that he fished less often as his headaches became more frequent. (AR 198.) He also stated that his headaches prevent him from having relationships and "hanging out" with friends. (AR 201.)

Wozniak filed for disability insurance benefits on April 13, 2011 and for SSI on April 21, 2011. (AR 163, 166.) His applications for benefits were denied, and a hearing was held on October 12, 2012 before Administrative Law Judge ("ALJ") Donald McDougall. (AR 25.) Wozniak appeared and testified, and was represented by an attorney. (*Id.*) A vocational expert ("VE") also testified at the hearing. (AR 44-51.)

At the hearing, Wozniak testified to the frequency and severity of his headaches.  (AR 27.)  He also stated that he has trouble concentrating and suffers from alternating periods of mania and depression due to his bipolar disorder.  (AR 28-29.)  He testified that his headaches caused him to miss work ten to twelve times per month, leading to discharge from all his previous jobs.  (AR 34.)  He further testified that he had difficulty interacting with other people. (AR 39.)

The ALJ issued an unfavorable decision on November 5, 2012.  (AR 10-18.)  The Appeals Council denied Wozniak's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1.)  Wozniak appealed to this court on March 24, 2014. (Doc. 1.)

## II.      The ALJ's Decision

"Disability" under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In evaluating disability claims the Commissioner uses a five-step procedure.  *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).  At step one the ALJ must determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, at step three the ALJ determines whether the severe impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R.  §§ 404.1520(d), 416.920(d).  If so, the claimant is presumptively disabled.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984.)

If the claimant is not presumptively disabled, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the most the claimant can do in a work setting despite his limitations based on the relevant evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the ALJ considers whether the claimant's RFC precludes the performance of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). At the fifth and final step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proof in the first four steps; at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

The ALJ first determined that Wozniak met the insured status requirements for disability benefits through March 31, 2013. (AR 12.) Employing the five-step procedure, the ALJ determined that Wozniak had not engaged in any substantial gainful activity since his alleged disability onset date of March 19, 2011. (*Id.*) At step two, the ALJ found that Wozniak had the following severe impairments: "affective disorder and migraine headaches." (*Id.*) The ALJ noted that Wozniak's "alcohol abuse [was] not material to the finding of disability." (*Id.*) At step three, the ALJ found that Wozniak did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listings. (*Id.*)

The ALJ then found that:

> [Wozniak] has the residual functional capacity to perform a range of unskilled simple repetitive light work with the following limitations: must be able to briefly change positions at least every ½ hour; and no close concentration or attention to detail for extended periods.

(AR 14.) The ALJ found that Wozniak was unable to perform any of his past relevant work. (AR 17.) The ALJ then concluded based on Wozniak's RFC and on the VE's testimony that there are other jobs in significant numbers in the national economy that Wozniak could perform, such as collator operator and laundry sorter. (AR 17-18.) Finally, the ALJ concluded that Wozniak had not been under a disability from his alleged disability onset date through November 5, 2012, the date of his decision. (AR 18.)

### III.   Standard of Review

This court reviews "the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."[1] *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'" *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). The court should keep in mind "the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

### IV.   Analysis and Conclusions

Wozniak argues that the ALJ's RFC finding is not supported by substantial evidence because it contains no social functioning limitations or limitations caused by his headaches. (Doc. 10-1 at 10-15.) He further contends that the ALJ failed to fully develop the record. (*Id.* at 15-16.)

### A.   The ALJ's RFC Determination
#### i.   Social Functioning

Wozniak argues that the ALJ's RFC determination should have included social functioning limitations.

Wozniak first cites the ALJ's conclusion that Wozniak had "moderate difficulties" in social functioning in his step three analysis as evidence that the absence of social functioning limitations in the RFC constitutes legal error. (Doc. 10-1 at 12.) However, "the limitations identified in the 'paragraph B' and 'paragraph C' criteria [of the adult mental disorders listings]

---

[1]   The standard of review is the same for SSI and Social Security disability insurance cases, and the same case law is applicable to both kinds of benefits. *See* 42 U.S.C. § 1383(c)(3).

*are not an RFC assessment* but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Social Security Ruling 96-8p, 1996 WL 374184, at *4 (emphasis added). Therefore, a step-three finding that a claimant faces moderate limitations in a functional area does not mandate a finding that the limitations affect the claimant's RFC. *See also Ross v. Colvin*, No. 13-CV-6332P, 2015 WL 1189559, at *12 (W.D.N.Y. Mar. 16, 2015) ("[A] conclusion that a claimant suffered from moderate impairments at steps two or three is not necessarily inconsistent with a conclusion that a claimant is not disabled." (citing *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014)).

In making a RFC determination, the ALJ is required to conduct "a detailed assessment" of the claimant's functional limitations and "must consider limitations and restrictions imposed by all of [the claimant's] impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *4-5. The ALJ considered Wozniak's social functioning limitations in determining his RFC. (AR 15.) Therefore, the ALJ committed no legal error in conducting the RFC. *Cf. Thompson v. Astrue*, No. 10-CV-6576 CJS, 2012 WL 2175781, at *13 (W.D.N.Y. May 30, 2012) (reversing and remanding where it was unclear "whether the ALJ gave any consideration to the limitations she identified at step 3 when she was making her RFC determination").

The ALJ's RFC determination is also supported by substantial evidence. In support of his RFC determination, the ALJ cited the opinion of consulting examining psychologist Gregory Fabiano, Ph.D. (AR 15.) Dr. Fabiano observed that Wozniak was responsive and cooperative; his social skills were adequate; eye contact was appropriate; he displayed a full range of affect and his speech and thought content were appropriate; and his mood was euthymic. (AR 274-75.) Dr. Fabiano also noted that Wozniak reported having friends and "socializ[ing] with [others] such as his roommates and his sponsor." (AR 275.) He further recorded that Wozniak "reported hobbies and interests includ[ing] playing board games." (AR 276.) Dr. Fabiano diagnosed Wozniak with bipolar disorder, panic disorder, PTSD, and alcohol dependence. (*Id.*) He opined that Wozniak could relate appropriately with others, and concluded that Wozniak's psychiatric impairments did not appear to be significant enough to interfere with his functioning on a daily basis. (*Id.*)

The ALJ also cited records from Kaleida Behavioral Health, where Wozniak had participated in an outpatient program. On a July 8, 2011 quality of life assessment questionnaire,

Wozniak had marked "good" (on a scale that included "poor, fair, good," and "excellent") with regard to his social life; participation in community activities; ability to have fun and relax; and self-esteem. (AR 359.) On an October 13, 2011 questionnaire, Wozniak marked "good" with regard to his ability to have fun and relax and marked "fair" with regard to his social life, participation in community activities, and self-esteem. (AR 433.) As the Commissioner notes, the record also reveals that Wozniak participated without significant difficulty in his group therapy sessions, indicating an ability to interact appropriately with others in a work setting. (Doc. 15-1 at 16; AR 279-329; AR 362-434.)

Wozniak points to the opinion of agency consulting psychologist Dr. Ted Andrews, who examined Wozniak, as evidence that he faced social limitations that should have appeared as restrictions to his RFC. (Doc. 10-1 at 11.) Dr. Andrews wrote that Wozniak was "[c]apable of SGA/low contact." (AR 79.) Wozniak contends that Dr. Andrews opined that he was only capable of work that involved low social contact. To the extent Dr. Andrews's opinion is evidence that Wozniak's RFC should include social functioning limitations, it does not detract from the substantial amount of evidence in the record supporting the ALJ's determination— especially because Dr. Andrews also opined that Wozniak was "[n]ot significantly limited" in his "ability to work in coordination with or in proximity to others without being distracted by them" and that Wozniak did not have social interaction limitations. (AR 81.)

Wozniak also cites the opinions of his treating therapist and psychiatrist as evidence that his RFC includes social functioning limitations. (Doc. 10-1 at 11.) In an October 12, 2012 opinion, his treating therapist, Janine Hack, LMSW, assessed Wozniak's GAF score at 53. (AR 598.) She opined that he would be unable to maintain attention for a two-hour segment; complete a normal workday and workweek without interruptions from psychologically based symptoms; or respond appropriately to changes in a routine work setting. (AR 600.) She also opined that he was seriously limited in working in coordination with or proximity to others without being unduly distracted, as well as in accepting instructions and responding appropriately to criticism from supervisors. (*Id.*) Wozniak's treating psychiatrist, Jeffrey Kashin, M.D., adopted Hack's opinion on October 22, 2012. (AR 605.)

The ALJ gave little weight to the opinions of Dr. Kashin and Hack because "they are not supported by the preponderance of the evidence in file, and [Wozniak's] subjective complaints

7

are doubtful." (AR 16.) Wozniak does not challenge the ALJ's consideration of his treating source opinions, nor does the court find error with the ALJ's decision to accord the treating source opinions little weight.[2]

The ALJ did not err in declining to include social functioning limitations in Wozniak's RFC, and his conclusion that Wozniak's RFC did not include social functioning limitations is supported by substantial evidence. *See Bliss v. Colvin*, No. 3:13-cv-1086 (GLS/CFH), 2015 WL 457643, at *12 (N.D.N.Y. Feb. 3, 2015) (holding that ALJ's RFC determination which did not include social functioning limitations was supported by substantial evidence where agency consulting examiner opined that claimant had only mild social functioning limitations and claimant's GAF score had been assessed at 50 and 59).

### ii.    Headaches

Wozniak contends that the ALJ's RFC determination is not supported by substantial evidence because it does not account for the severity of his headaches. (Doc. 10-1 at 12-15.)

Wozniak first argues that the ALJ erred by citing his noncompliance with medication as the reason for discounting his credibility as to his alleged symptoms. In concluding that Wozniak's statements concerning the severity of his headache symptoms were not credible, the ALJ observed that he "was not compliant with headache medication . . . which raises the question of the severity of the impairments." (AR 16.) Wozniak cites Social Security Ruling 96-7p, which instructs ALJs not to conclude a claimant's allegations of pain are less credible because the claimant does not follow the prescribed treatment unless "there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7. The ruling further states that the ALJ "may need to . . . question the individual at the administrative proceeding in order to determine

---

[2] The ALJ generally gives more weight to treating source opinions where they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The bases of Hack's opinion were statements all preceded by phrases indicating that she transcribed subjective reports from Wozniak, such as: "Kenneth reported" or "Kenneth indicated". (AR 598, 600.) Above the chart in which she checked off Wozniak's symptoms, Hack wrote: "Kenneth reports the following". (AR 599.) Dr. Kashin's opinion is a signed photocopy of Hack's opinion. (AR 605-10.)

whether there are good reasons the individual . . . does not pursue treatment in a consistent manner." *Id.*

Wozniak argues that the ALJ failed to consider Wozniak's explanation for his non-compliance with medication. (Doc. 10-1 at 13.)  However, the hearing transcript reveals that the ALJ questioned Wozniak about whether he was taking any headache medication at the time of the hearing (he was not); whether he had found any medication that had helped both his headaches and his bipolar disorder symptoms; whether he experienced any side effects from the medications; and whether he told his headache treating physician that no medications had worked. (AR 27-31.)  In his decision, the ALJ discussed Wozniak's credibility issues at length, and observed that while Wozniak "testified that he had gotten little or no help from his psychiatric medications, . . . he told his professional treaters he had been helped." (AR 16.)

The ALJ's observation that Wozniak's testimony concerning the efficacy of his medications was inconsistent with his previous statements as revealed by the case record sufficiently addresses Wozniak's explanation for not complying with his prescribed course of treatment.  The ALJ adequately followed the instruction to consider whether there were "good reasons" that Wozniak did "not pursue treatment in a consistent manner," and he reasonably decided there were not. *See Verhow v. Astrue*, No. 08-CV-6423-CJS, 2009 WL 3671665, at *8-9 (W.D.N.Y. Oct. 29, 2009) (concluding ALJ was "justified in questioning the credibility of Plaintiff's subjective statements about his pain" where the ALJ "ask[ed] for explanations as to why Plaintiff had not sought medical treatment" and it was reasonable for the ALJ to "find th[e] answers unsatisfactory and not entirely credible").

Wozniak next contends that the ALJ "mischaracterized the record by stating that [Wozniak] only occasionally complained of headaches." (Doc. 10-1 at 14.)  The ALJ noted that he "found very little in the record regarding [Wozniak's] headaches, other than occasional complaints not substantiated by the clinical evidence (CT scans)." (AR 16.)  Wozniak urges that he "consistently reported chronic, frequent, debilitating headaches" and that his complaints are documented in the record, essentially arguing that the ALJ did not consider the full extent of the record as it pertains to Wozniak's headaches. (Doc. 10-1 at 14.)

The ALJ cited sufficient evidence concerning Wozniak's headache complaints and treatment to indicate that he adequately considered the evidence in the record in making his RFC determination. The ALJ's decision lists multiple occasions in the record where Wozniak sought treatment for his headaches or complained of his headaches. The ALJ cited: Wozniak "complained of headaches in April 2011 and reported Imitrex was not working"; "In June 2011, Jacobs Neurological Institute indicated [Wozniak] was headache free until two years prior, according to [Wozniak]"; "Headaches were reported again in September 2011, March 2012, and April 2012"; and the unremarkable results of an April 2011 CT scan. (AR 15-16 (internal citations omitted).)

Wozniak cites a February 2012 clinical assessment in which he reported having had "[p]ersistent or severe headaches" as well as the report of agency consulting physician Donna Miller, D.O., who noted that Wozniak "stated he gets about 20 migraines per month," as additional evidence in the record that the ALJ failed to cite. (AR 268, 516.) However, "[a]n ALJ does not have to state on the record every reason justifying a decision," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation omitted). Indeed, the ALJ cited Dr. Miller's report in a different section of his decision, indicating he was aware of its contents and considered them in rendering his decision. (AR 15.) The omission of two instances of Wozniak's headache complaints—in light of the ALJ's otherwise sufficiently exhaustive coverage of Wozniak's headache complaints and treatments in the record—does not indicate that the RFC lacks substantial evidentiary support.

Wozniak further argues that the ALJ erred by "requir[ing] that objective medical evidence support [Wozniak's] complaints of headaches," because headaches "are often not reflected in laboratory tests or other medical evidence." (Doc. 10-1 at 14.) Wozniak concedes that "the ALJ is not obligated to accept without question the credibility of a claimant's subjective complaints," but contends that the ALJ failed to cite adequate reasons for discounting Wozniak's credibility concerning the severity of his headache symptoms. (*Id.*)

The ALJ recognized that Wozniak had been diagnosed with "cluster headaches" and he determined Wozniak's "migraine headaches" to be a severe impairment. (AR 12, 15.) Wozniak testified that his migraines could last for "three days in a row" and that he usually gets migraines

five days a week. (AR 43.) He further testified that when he has a migraine he becomes sick and must stay in bed. (AR 27.) But a disability finding cannot be made based on a claimant's statements about his symptoms alone. 20 C.F.R. § 404.1529(a).

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

SSR 96-7p, 1996 WL 374186, at *1.

The record provides substantial evidence to support the ALJ's conclusion that Wozniak's testimony at the hearing was not credible as to the severity of his headache symptoms.

First, the ALJ's decision does not state that he based his credibility determination on a lack of objective medical evidence alone. While the ALJ noted that the CT scan produced unremarkable results, he also cited Wozniak's inconsistent statements concerning his alcohol and drug use and Wozniak's noncompliance with some of his prescribed treatment, described above. (AR 15-16); *see* SSR 96-7p, 1996 WL 374186, at *5-6 (noting that "[t]he consistency of the individual's statements with other information in the case record" is a "strong indication of the credibility of an individual's statements"). For example, the ALJ questioned Wozniak at the hearing about various alcohol use incidents while participating in an outpatient treatment program. (AR 36.) Wozniak denied that he reported drinking beer the night before a group treatment session, stating "'I don't know where they're getting this.'" (AR 37.) This statement was inconsistent with Kaleida Behavioral Health records in which a staff counselor recorded that Wozniak "report[ed] he drank a 22 oz beer last night around 8 pm." (AR 472.) Additionally, while Wozniak testified that he lost his previous job at Tops due to absenteeism caused by headache pain, the record indicates that he stated to a Kaleida Behavioral Health social worker that he "lost that job due to [alcohol] use." (AR 33-34, 497.)

The ALJ was justified in questioning Wozniak's credibility in light of his inconsistent statements and noncompliance with prescribed treatment, in addition to the unremarkable results of Wozniak's CT scan. *See Pidkaminy v. Astrue*, 919 F. Supp. 2d 237, 250-51 (N.D.N.Y. 2013)

(holding that credibility determination was supported by substantial evidence where ALJ considered plaintiff's "inconsistent statements about his work record" as well as plaintiff's "treatment records and medications"). The ALJ's RFC determination need not include further limitations and is supported by substantial evidence.

### B.    The ALJ's Duty to Develop the Record

At the time of his hearing, Wozniak had recently been admitted to the emergency room on two occasions and had scheduled an upcoming appointment with Dr. Frieary, his migraine treating physician. He argues that the ALJ failed to acquire records for these events. Wozniak further contends that the ALJ failed to request a treating source opinion from Dr. Frieary. (Doc. 10-1 at 15-16.)

The ALJ has an affirmative duty to develop the administrative record "for at least a twelve-month period if there was reason to believe that the information was necessary to reach a decision." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); *see also* 20 C.F.R. § 416.912(d)(2). The Commissioner is obligated to seek out additional evidence, however, only where there are "obvious gaps" in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). The ALJ's responsibility includes "making every reasonable effort to help [the claimant] get medical reports from [his] own medical sources." 20 C.F.R. § 416.945(a)(3).

At his hearing, Wozniak informed the ALJ through his attorney that he had been admitted to the emergency room twice within the past three weeks due to his migraines. (AR 51.) The ALJ announced he would hold the record open for two additional weeks, and Wozniak's attorney agreed to submit the emergency room records within those two weeks. (*Id.*) The hearing transcript does not indicate that the ALJ was made aware of Wozniak's upcoming appointment with Dr. Frieary. During the subsequent two weeks, Wozniak's counsel submitted a treating physician opinion from Dr. Kashin. However, she did not submit the emergency room records mentioned at the hearing, nor did she submit any records or opinion from Dr. Frieary. The record includes no further communication indicating why Wozniak's attorney did not submit the documents at issue.

"Although the ALJ has an affirmative duty to develop the administrative record, the ALJ's obligation is not unlimited." *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163

(N.D.N.Y. 2012).  "[T]he ALJ may satisfy the duty to develop the record by relying on the claimant's counsel to obtain additional medical documentation," particularly where, as here, claimant's counsel informed the ALJ that she would submit the documents and failed to do so within the time agreed upon.  *Id.*  Moreover, claimant's counsel submitted a report from Dr. Kashin following the hearing, "which could have led the ALJ reasonably to conclude that no further records were available or forthcoming."  *Id.*

Nor was the ALJ required to request a treating physician opinion from Dr. Frieary.  (AR 456-66.)  No "gap" needs to be filled where the ALJ was in possession of "comprehensive medical notes" from the claimant's treating physician covering the relevant time period.  *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (Summary Order).  The ALJ was in possession of Dr. Frieary's treatment notes.  The ALJ sufficiently fulfilled his duty to develop the administrative record.

### Conclusion

For the reasons stated above, Wozniak's motion for judgment on the pleadings is DENIED, and the Commissioner's motion is GRANTED.  The decision of the Commissioner is AFFIRMED.

Dated this 30th day of June, 2015.

_____
Geoffrey W. Crawford, Judge
United States District Court